Kenneth N. HAMMOND, Appellant,

v.

DISTRICT OF COLUMBIA BOARD
OF PAROLE, Appellee.

No. 99–SP–83.

District of Columbia Court of Appeals.

Argued May 25, 2000.

Decided July 17, 2000.

Peter H. Meyers, Washington, DC, appointed by this court, for appellant.

Mary L. Wilson, Assistant Corporation Counsel, with whom Robert Rigsby, Interim Corporation Counsel at the time the motion was filed, and Charles L. Reischel, Deputy Corporation Counsel, filed a motion for summary affirmance in lieu of a brief.

Before SCHWELB and WASHINGTON, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Appellant Kenneth Hammond appeals the trial court's order denying his petition for writ of habeas corpus, filed pursuant to D.C.Code § 16–1901 (1999 Supp.), in which he asserted that his due process rights were violated when—following his successful challenge of the D.C. Parole Board's initial parole revocation order—the Board imposed a longer set-off, i.e., the period of time which must pass before it would next consider releasing him on parole. He contends that the Board's actions in imposing a longer set-off triggered a presumption of vindictiveness, and that the Board did not rebut the presumption by setting forth objective information concerning conduct on his part after the first parole revocation hearing that justified the imposition of a longer set-off. The government, assuming the applicability of a presumption of vindictiveness, contends the presumption was overcome when the Board noted that appellant's credibility was "shot" as a result of his testimony at his second parole revocation hearing. Because we are not persuaded that the government has overcome the presumption, we reverse.

I.

Appellant was released on parole by the D.C. Parole Board in April 1996. In August 1997, appellant was arrested in Maryland on charges of second-degree rape and second-degree sexual offense, arising out of an incident in which his girlfriend alleged he had raped her. On January 6, 1998, appellant pled guilty to second-degree assault, a misdemeanor, and the following day a parole violation warrant issued by the D.C. Parole Board was executed against him. At his parole revocation hearing, he was found to have committed four parole violations: (1) failure to obey all laws while on parole; (2) failure to report his Maryland arrest to his parole officer; (3) failure to meet with his parole officer on one occasion; and (4) failure to participate in an outpatient drug program, a special condition of his parole. Based on these findings, on February 25, 1998, the Parole Board issued an order revoking appellant's parole, and ordered that he be reconsidered for parole on the set-off date of January 7, 2000.

On March 18, 1998, appellant filed a pro se petition for writ of habeas corpus. In

response to a show cause order issued by the trial court, the Parole Board submitted a memorandum to the court conceding that it had erred in failing to provide a written explanation for its imposition of a set-off that was longer than that recommended by the guidelines, and indicated that upon dismissal of the petition, a new revocation hearing would be scheduled. Based on this submission, the trial court denied and dismissed appellant's petition, and the Parole Board scheduled a new revocation hearing. At the second revocation hearing, the hearing official concluded that appellant had committed only two violations—failure to obey all laws and failure to meet with his parole officer—and recommended a set-off date of April 7, 1999. Disagreeing with the recommended disposition, Board Chair Margaret Quick recommended a set-off date of January 6, 2001, noted the presence of three countervailing factors, and added the comment: "Subject's credibility is shot. This testimony is different from his previous hearing on at least one allegation. Subject was convicted on a charge stemming from two allegations of rape. Subject was not adhering to his special condition and reporting requirements." On September 16, 1998, the Parole Board issued an order revoking appellant's parole and ordering a set-off date of January 6, 2001, as recommended by Ms. Quick. The three countervailing factors identified by Ms. Quick were cited on the revocation order as reasons for the Board's decision. These factors were "prior record of violent behavior," "opportunity but little effort to engage in productive programming or work," and "needs programming to remain crime-free in the community."

On December 10, 1998, the Board issued a third parole revocation order, specifying only the "failure to obey all laws" violation, because the evidence on the other remaining violation was insufficient.[1] The third revocation order specified the same set-off

date—January 6, 2001—as the second revocation order, and cited the same three countervailing factors.

## II.

■ In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court applied the due process clause to a trial court's imposition of a longer sentence on the appellant, after the appellant's conviction following a retrial which had been necessitated by the reversal on appeal of the appellant's initial conviction. The Court held that "Due process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725, 89 S.Ct. 2072. The Court continued,

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 726, 89 S.Ct. 2072. "In sum, the Court [in *Pearce*] applied a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States v. Goodwin,* 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

The District of Columbia, in its brief to this court, assumed *arguendo* that the *Pearce* presumption applies to parole de-

---

1. The other violation—failure to meet with his parole officer—was based on records from appellant's parole officer and could not be

confirmed because the parole officer was no longer employed by the Board, having been arrested on bribery charges.

terminations and did not provide any authority or argument to the contrary. A number of federal courts of appeals have extended the *Pearce* presumption to encompass parole determinations. *See, e.g., Marshall v. Lansing,* 839 F.2d 933 (3 rd Cir.1988); *Kindred v. Spears,* 894 F.2d 1477 (5 th Cir.1990); *Bono v. Benov,* 197 F.3d 409 (9 th Cir.1999). As the Third Circuit stated in *Marshall, supra,*

> We believe that the logic of *Pearce* and its progeny applies with equal force to the facts of this case. Just as a sentencing judge might resent a challenge to an underlying conviction which he himself had overseen, so too might the Commission look unkindly upon a successful court challenge to its [decisions], thus supplying a motive for retaliation.... [W]here a prisoner's challenge could be viewed as an assault on the Commission's much-valued discretion, such a challenge could provide an additional motive for retaliation.

839 F.2d at 947 & n. 19. We have found no cases where a reviewing court has declined to apply the *Pearce* presumption in a parole case, and the Supreme Court has never addressed this issue. We are convinced by the logic of those courts that have applied the *Pearce* presumption in parole cases, and thus we will apply it here.

### III.

■ Under *Pearce,* the presumption of vindictiveness arises "whenever a judge imposes a more severe sentence upon a defendant after a new trial" and the reasons for doing so do not "affirmatively appear." 395 U.S. at 726, 89 S.Ct. 2072. Subsequent cases have limited the application of the presumption to circumstances "where its objectives are thought most efficaciously served," *Alabama v. Smith,* 490 U.S. 794, 798, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (quotations and citations omit-

ted)—"those in which there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority," *id.* at 799, 109 S.Ct. 2201 (quotations and citations omitted). Thus, the presumption does not apply where sentencing was entrusted to the jury, *Chaffin v. Stynchcombe,* 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), or where the increased sentence was imposed by a superior court after the defendant exercised his right to a new trial *de novo* after conviction in an inferior court, *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), or where the first sentence was based on a guilty plea which was subsequently vacated and followed by a trial, *Smith, supra.*

■ For the presumption to apply, the harsher sentence—here, the longer set-off—must be issued in response to a successful appeal to a higher authority. *Bono, supra,* 197 F.3d at 416.[2] Appellant asserts that a presumption of vindictiveness arose when the Parole Board issued the second order revoking his parole, imposing a longer set-off. *See United States v. Goodwin,* 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

■ The sequence of events that led to the issuance of the second revocation order began when appellant filed his first petition for habeas corpus. In response to the trial court's show cause order, the Parole Board submitted a memorandum to the court indicating that it would vacate appellant's parole revocation order and hold a second hearing. Appellant's petition is not in the record, nor is the Board's memorandum, except for some pages appellant attached to his second petition for habeas corpus. One of these pages makes clear, however, that the Board conceded one of appellant's allegations—that the Board had erred in failing to offer an explanation

---

**2.** Although *Bono* uses the language "reversal by a higher authority," it does not appear that outright reversal is required, simply success by the parolee. *See Pearce, supra,* 395 U.S. at

725, 89 S.Ct. 2072 (condemning "vindictiveness against a defendant for having successfully attacked his first conviction").

for the imposition of a set-off that was outside the guidelines. We can infer only that it was based on this concession, and the accompanying promise to conduct another hearing, that the trial court discharged the show cause and denied appellant's habeas corpus petition.

■ Although the court did not reverse appellant's initial parole revocation order, the Board's concession to the court—and subsequent rehearing—anticipated and preempted such a reversal. Because these events occurred in response to appellant's exercise of his right to appeal—specifically, his contention that the Board had erred in failing to explain its imposition of a set-off that was outside the guidelines—we conclude that appellant's exercise of that right was successful.[3] Thus, there is a causal link between appellant's successful filing of a habeas corpus petition and the second revocation hearing and order. Because the second revocation order imposed a longer set-off while finding fewer parole violations, there is a "reasonable likelihood" that the longer set-off was the product of actual vindictiveness, and the presumption of vindictiveness applies.

### IV.

■ "Where the presumption of vindictiveness applies, the burden shifts to the government to rebut that presumption." *Bono, supra,* 197 F.3d at 420 (citing *Wasman v. United States,* 468 U.S. 559, 568, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984)). In order to overcome the presumption of vindictiveness, "the factual data upon which the increased [set-off] is based must be made part of the record," *Pearce, supra,* 395 U.S. at 725, 89 S.Ct. 2072, and the data must reflect "objective information

concerning identifiable conduct on the part of [the parolee] occurring after the time of the original ... proceeding." *Id.* at 726, 89 S.Ct. 2072. The government points to discrepancies in appellant's testimony between the first and second revocation hearings as supporting a longer set-off, as evidenced by Ms. Quick's comment on appellant's credibility.[4] It is to the records of these hearings that we must turn to determine whether they provide objective information sufficient to rebut the presumption.

■ The charge of failure to obey all laws while on parole was sustained after both hearings. On this charge, the record of the first hearing shows that appellant denied the rape charge and admitted assaulting the complainant, and said the offense occurred between himself and his girlfriend. The record of the second hearing states, "Denies involvement." The alleged conduct to which appellant's denial appears to apply is provided at the top of the same page of the hearing report: "Arrested and charged w/ 2 cts. rape and sexual offense in Montgomery Cty, Md." Because appellant's denial is more reasonably seen as applying to the rape charges, which were nolle prossed, than to the assault charge on which he was convicted and which is not listed on the hearing report, the record regarding this charge does not provide an objective basis for questioning appellant's credibility at the second hearing.

On the charge of failure to report his Maryland arrest to his parole officer, the record of the first hearing states, "Admits ... says he was not allowed use of phone." The record of the second hearing states,

---

3. If the Board had ordered a new hearing *sua sponte,* rather than in response to appellant's habeas corpus petition, the presumption would not apply. *See, e.g., Kindred, supra,* 894 F.2d at 1480; *Weaver v. Maass,* 53 F.3d 956, 960 (9 th Cir.1995).

4. Chairman Quick's comment was not included in the second revocation order. That order, instead, listed the three "countervailing

factors" listed above (page 3, bottom) as justification for the imposition of a set-off date outside the guidelines. There is no evidence that these three countervailing factors reflect conduct occurring after the time of the original revocation hearing. Certainly the first countervailing factor—prior record of violent behavior—does not reflect recent conduct.

"Denies. States he called from Mont. Co Jail. Case worker gave him permission & this is how P.O. found out about arrest." The record also states, "Field sheet doesn't reflect how PO found out about arrest." This violation was sustained as a result of the first hearing but, significantly, no finding was entered as a result of the second hearing. Since neither of appellant's versions was corroborated, the record provides no objective basis for finding that appellant's testimony was less credible at the second hearing than at the first hearing.

On the charge of failure to meet with his parole officer, the record of the first hearing states, "Deny receiving letter but admits to not reporting 2/10/97." The record of the second hearing states, "States he may have missed this date" regarding his failure to appear on 2/10/97 and "Denies. Letter sent to old address." regarding his failure to report on 2/24/97. Both violations were sustained as a result of the first hearing, and only the second violation was sustained as a result of the second hearing. Because appellant's testimony was essentially unchanged between the two hearings, the record regarding this charge does not support a finding that appellant's credibility was diminished at the second hearing.

On the charge of failure to participate in an outpatient drug program, the record of the first hearing states, "Admits." The record of the second hearing states, "Denies," and cites D.C. Jail records that show appellant was not released until noon on the scheduled date. This violation was sustained as a result of the first hearing and not sustained as a result of the second hearing. Although appellant changed his testimony at the second hearing, this change might have been prompted by the availability of jail records which suggest that it was not possible for him to participate in the program on the scheduled date. There does not appear to be an objective basis in the record for questioning the credibility of his failure to admit the violation on that occasion.

In sum, there does not appear to be objective support in the record for the increased set-off date imposed by the Board following appellant's successful challenge to his first parole revocation order. Furthermore, the result of the administrative process for appellant—after a second hearing and two additional revocation orders—was that of four violations originally found, only one was finally sustained. Accordingly, we remand the case to the trial court with instructions to order the Parole Board to vacate appellant's set-off date and hold a parole reconsideration hearing forthwith.[5]

*Reversed and remanded.*

5. "When a court has already remanded a case to an administrative agency for failure to explain adequately its decision, and the agency, on remand, again fails to provide a reasoned basis for its conclusions, a reviewing court can set aside the agency's decision so that it comports with a more readily apparent conclusion." *Marshall, supra,* 839 F.2d at 945 (citing *Greyhound Corp. v. ICC,* 215 U.S.App. D.C. 322, 668 F.2d 1354 (1981)).