James Charles **FENNER**,
Petitioner–Appellant,

v.

**UNITED STATES PAROLE COMMISSION**, Respondent–Appellee.

No. 00–15074.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 2000

Filed May 23, 2001

Joyce Leavitt, Assistant Federal Public Defender, Oakland, California, for the petitioner-appellant.

Thomas Mazzucco, Assistant United States Attorney, San Francisco, California, for the respondent-appellee.

Before: WALLACE, FISHER, and RAWLINSON, Circuit Judges.

WALLACE, Circuit Judge:

Fenner appeals from the district court's order denying his petition for habeas corpus relief. Almost three years after his release from federal custody, Fenner filed a pro se habeas petition challenging his special parole term. Less than one month later, he was arrested for parole violations. Fenner's amended petition contends (1) that his sentence did not include a special parole term, and (2) that the United States Parole Commission (Commission) issued the warrant for his arrest in retaliation for filing a habeas petition. The district court had jurisdiction pursuant to 28 U.S.C. § 2241. We have jurisdiction over this timely filed appeal pursuant to 28 U.S.C. § 1291, and we affirm.

I

On August 22, 1986, Fenner pleaded guilty to one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), and two counts of possessing a firearm in violation of 18 U.S.C. Appendix II § 1201(a)(1). The district court sentenced Fenner to seventeen years imprisonment and imposed a five-year special parole term, as required by 21 U.S.C. § 841(b).

Pursuant to Federal Rule of Criminal Procedure 35(b), Fenner moved to reduce his term of imprisonment, and, in an order dated January 12, 1989, the district court partially granted his motion, reducing his total period of incarceration to twelve years. Fenner's motion did not include a request to strike or modify the special parole term, and the district court's order amending his sentence made no reference to it, addressing only the custody portion of Fenner's sentence.

The government moved for reconsideration of the district court's order. The government's motion did not address the absence of the special parole term. Fenner filed a letter with the district court opposing the government's motion and seeking a modification or clarification of the order with respect to his special parole. The district court denied the government's motion and denied Fenner's request for clarification or modification. The government appealed the order and, on July 16, 1990, we affirmed the district court's reduction of Fenner's custody sentence in an unpublished disposition.

Fenner was released from custody in June 1992, pursuant to a mandatory release date. He refused to sign the conditions of release form which indicated that his special parole term of five years would commence on September 18, 1996. After his release, Fenner violated the terms of his regular parole and returned to prison. On October 22, 1995, Fenner again was released from custody pursuant to a mandatory release date; this time, he did sign the conditions of release form, which contained the same identification of the special parole term.

Fenner abided by the terms of his special parole without complaint for nearly three years after its commencement on September 18, 1996. However, on June 21, 1999, he filed a pro se petition for a writ of habeas corpus alleging that, under the terms of his amended sentence, he was not subject to special parole. On July 13, 1999, less than one month after Fenner filed his petition, Fenner's probation officer sent a letter to the Commission alleging that Fenner had violated conditions of his special parole, and on July 19, 1996, the Commission issued a warrant for Fenner's arrest, charging him with six parole violations. Fenner was arrested on July 26, 1999, and at his January 18, 2000, parole revocation hearing, Fenner was found guilty on five of the six charges (charge

one having been dropped by the Commission prior to the hearing).

On August 5, 1999, the district court appointed the Federal Public Defender to represent Fenner, and granted leave to amend his habeas petition. In part, the amended petition argued that (1) the January 13, 1989, order reducing Fenner's sentence to twelve years imprisonment did not impose a term of special parole, and (2) the Commission's decision to charge Fenner with special parole violations was based on a vindictive desire to punish Fenner for filing his habeas petition.

The same judge who issued the 1989 order reducing Fenner's sentence determined that the 1989 order modified only the custody portion of Fenner's sentence, leaving the other terms intact, including the special parole term. Thus, the court held that while the 1989 order failed to include any reference to the special parole term, it remained in effect. The district court pointed out that Fenner's motion for reduction of his sentence did not request any modification of the special parole term; thus, the 1989 order only responded to Fenner's request for reduced incarceration and did not impact the term of special parole. Further, the court emphasized that Fenner's behavior upon release from custody was consistent with the continuing effect of the special parole term. The court found that when Fenner was released from custody in October 1995, he signed a document identifying his special parole, and in November 1998 he signed a document agreeing to a modification of his parole conditions.

Next, the court held that Fenner's petition failed to include sufficient factual support for his vindictiveness claim. The court found that there was no evidence in the record that the Commission was aware of Fenner's habeas petition before he was arrested on the parole violation charges.

Thus, there was no causal connection between Fenner's petition and the Commission's charges. In addition, the court held that it was insufficient to show that Fenner's probation officer was aware of his petition as that "does not establish that the information was known to the Parole Commission." The district court denied Fenner's petition.

## II

We first analyze whether Fenner is subject to the special parole term. Fenner contends on appeal that he was not, arguing that when the district court amended his sentence in 1989, reducing his term of imprisonment from seventeen to twelve years, it eliminated the term of special parole imposed in his original sentence by omitting any reference to it. Thus, according to Fenner, the amended sentence is unambiguously clear: because it did not include a special parole term, he was not subject to one. He asserts that the language of the amended sentence must be taken at face value, without reference to the original sentence or the district court's subjective intent.

The government responds that (1) the district court's order addressed and modified only the custody portion of Fenner's sentence, leaving intact all other terms, and (2) Fenner always believed he was subject to a term of special parole. Thus, the government contends that Fenner is attempting to "receive a bonanza" simply because the district court omitted a term from its order that both the court and Fenner believed was still valid.

■ We review de novo the district court's decision to deny Fenner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. *Bowen v. Hood,* 202 F.3d 1211, 1218 (9th Cir.2000).

■ The January 1989 order standing alone makes no reference to special parole. Thus, on its face, no special parole is provided. The question is whether we may go behind the order because the omission of the special parole term in the district court's order created an ambiguity in Fenner's sentence. The Tenth Circuit has stated that one of the situations in which an ambiguity may exist in a sentence is where the plain meaning of the judge's words leads to an irrational or absurd result. *United States v. Villano,* 816 F.2d 1448, 1453 n. 6 (10th Cir.1987). In the instant case, Count Two carried with it a mandatory term of special parole as dictated by 21 U.S.C. § 841(b). Thus, by omitting the special parole term, the order amending sentence, if viewed alone without reference to either the original judgment order or the district court's intent, would be illegal because the district judge would have no authority to remove the special parole term. While illegality was not among the situations listed in *Villano* as creating ambiguity, clearly the omission of the special parole term leads to an irrational or absurd result if the amended sentence is viewed alone because "[w]e assume that the district court knows and applies the law correctly." *United States v. Cervantes–Valenzuela,* 931 F.2d 27, 29 (9th Cir.1991). Thus, the omission created an ambiguity.

■ "The intent of the sentencing court must guide any retrospective inquiry into the term and nature of a sentence." *United States v. Taylor,* 47 F.3d 508, 511 (2d Cir.1995) (internal quotation and citation omitted). Thus, to the extent that there is an ambiguity in the sentence, we properly may consider the sentencing judge's subjective intent. *United States v. O'Brien,* 789 F.2d 1344, 1347 (9th Cir.1986). "As a general rule, '[i]n determining the terms of a sentence, it is the intent of the sentenc-

ing judge which controls and that intent is to be determined by reference to the entire record.' " *United States v. Bull,* 214 F.3d 1275, 1279 (11th Cir.2000), *quoting United States v. Purcell,* 715 F.2d 561, 563 (11th Cir.1983) (alteration in original). In the instant case, the judge who denied Fenner's habeas petition was the same judge who originally sentenced him and was, therefore, in a good position to interpret the amended sentence. *See O'Brien,* 789 F.2d at 1347 n. 2. The record clearly indicates that the sentencing judge did not contemplate eliminating Fenner's term of special parole from his sentence. In his order denying Fenner's petition, the district judge stated that the "change in [Fenner's] sentence referred only to the *custody* portion of the sentence. It did not modify any of the other terms of the sentencing judgment, including the special parole term. The terms of the original sentence, except for the reduced custody, remained in effect." These statements unequivocally are convincing and probative evidence that the sentencing judge originally intended Fenner's amended sentence to impose a term of special parole. *See id.* at 1347.

Fenner contends that this analysis is backwards: it is his subjective expectation and not the sentencing judge's intent that controls. He relies upon *United States v. Garcia* for the proposition that "the pronouncement of a sentence, even if contrary to the district judge's intent, must control." 37 F.3d 1359, 1369 (9th Cir.1994), *citing United States v. Munoz–Dela Rosa,* 495 F.2d 253, 256 (9th Cir.1974).

■ In *Garcia,* the district court at oral sentencing inadvertently imposed a sentence of twenty-six years and six months pursuant to the wrong statutory provision. The minimum sentence the court announced was inconsistent with the requirements of the stated provision, which re-

quired a minimum sentence of only ten years. The written judgment, which did not state the court's intended minimum sentence, sentenced the defendant pursuant to the same provision. Thus, under an objective reading of the written judgment, the defendant would be eligible for parole after ten years. When the sentencing judge realized his mistake, he attempted to "correct" the written judgment by imposing the higher minimum sentence he intended, utilizing the correct provision. *Id.* at 1368. We held that the written judgment controlled because, unlike the oral pronouncement, it was unambiguous, and, because it was not illegal, "any attempt to 'correct' it violates ... double jeopardy rights." *Id.* Thus, *Garcia* commands that where there is an ambiguity in the oral pronouncement of a sentence, an unambiguous written judgment controls. In other words, where the defendant is unambiguously told one thing in the written judgment, the trial judge may not later go back and change it: a clear written judgment must control over any subsequent clarification or correction.

"If, however, [the written judgment] is ambiguous or open to reasonable interpretation ... it cannot possibly 'control.'" *O'Brien,* 789 F.2d at 1347. An ambiguous written sentence can provide no guidance and does not create any expectations on the part of the defendant. *Id.* Moreover, there is no reasonable expectation as to sentences that are illegal. *See United States v. Contreras–Subias,* 13 F.3d 1341, 1346 (9th Cir.1994). In the instant case, the amended sentence is ambiguous because, if read alone, it is illegal. Thus, Fenner is mistaken to rely upon *Garcia,* where the written judgment upon which the defendant relied was clear, unambiguous, and, though in error, legal.

Fenner's assertion that his expectation controls is further undermined by his own conduct, which demonstrates that he did not believe that the amended sentence was clear and unambiguous. First, Fenner's initial response to the order was to file a letter with the district court requesting clarification of the amended sentence regarding his special parole term. Second, upon being released from prison in 1995, he signed the conditions of release form, which contained an identification of special parole, and he abided by its terms for nearly three years before alleging that he was not subject to special parole.

For the foregoing reasons, we hold that the district court did not err in determining that Fenner was subject to the special parole term required by 21 U.S.C. § 841(b) and included in the court's original judgment order.

### III

Fenner also contends that the Commission violated his Fifth Amendment due process rights by charging him with parole violations in retaliation for filing a habeas petition.

██ Due process forbids "'enhanced sentences or charges ... motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights.'" *Bono v. Benov,* 197 F.3d 409, 416 (9th Cir.1999), *quoting Wasman v. United States,* 468 U.S. 559, 568, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984). In certain cases, courts apply a presumption of vindictiveness to prevent "'patently unconstitutional' penalt[ies] for the exercise of a defendant's right to appeal or seek a collateral remedy." *Id.* (internal citation omitted). Intended as a prophylactic rule, the presumption "acts as an aid to defendants who would otherwise have to shoulder a heavy burden of proof," *Kindred v. Spears,* 894 F.2d 1477, 1479 (5th Cir.1990), when a judge imposes a harsher sentence upon a defendant after the defendant has success-

fully challenged his conviction and is re-sentenced after a new trial. *See North Carolina v. Pearce*, 395 U.S. 711, 723–25, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

In *Bono v. Benov*, we followed the Third Circuit's decision in *Marshall v. Lansing*, 839 F.2d 933 (3d Cir.1988), extending the presumption of vindictiveness into the area of parole decisions. *Bono*, 197 F.3d at 419. We reasoned that " '[j]ust as a sentencing judge might resent a challenge to an underlying conviction which he himself had overseen, so too might the Commission look unkindly upon a successful court challenge to its [decisions], thus supplying a motive for retaliation.' " *Id.* (second alteration in original), *quoting Marshall*, 839 F.2d at 947. We also observed that " 'where a prisoner's [court] challenge could be viewed as an assault on the Commission's much-valued discretion, such a challenge could provide an additional motive for retaliation.' " *Id.* (internal citation omitted).

■ There are limits, however, in application of the presumption: it only applies where there is a "reasonable likelihood" that the parole decision is the product of actual vindictiveness. *Id.* at 416. "As a matter of logic, vindictiveness becomes a danger only where an event prods [the Commission] into a posture of self-vindication. Absent a triggering event, the court will not presume vindictiveness." *Id.* at 417 (internal quotation and citation omitted). "Where there is no reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Id.* at 416.

### A.

■ Our first inquiry is whether anything occurred to trigger the presumption of vindictiveness. A motivation for self-vindication requires something to excite it, and Fenner must show a crucial event from which vindictiveness could be imputed. *See Kindred*, 894 F.2d at 1479–80. Fenner's petition neither challenged a Commission decision nor "assault[ed] ... the Commission's much-valued discretion." *Bono*, 197 F.3d at 419. Rather, it challenged the terms of his sentence, which was imposed by the district court—a different decision-maker. Thus, "[u]nlike the judge who has been reversed, the [Commission] here had no motivation to engage in self-vindication." *Texas v. McCullough*, 475 U.S. 134, 139, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) (internal quotation omitted) (refusing to apply the presumption of vindictiveness where, upon retrial, a sentencing judge imposed a harsher sentence than had been imposed by the jury in the original trial); *see also United States v. Newman*, 6 F.3d 623, 631 (9th Cir.1993) (holding that the presumption did not apply where "a different judge imposed a wholly logical sentence [and] at the first trial, the sentencing judge was different from the trial judge, while at the retrial, the same judge presided over the trial and the sentencing proceedings").

Here, the Commission had no "personal stake" in the terms of the sentence imposed by the district court. *Bono*, 197 F.3d at 419. In contrast, in *Bono* the petitioner alleged that the Commission's twelve-year extension of his presumptive parole date was in retaliation for his two earlier successful habeas petitions challenging the Commission's proceedings and decisions. There we held that "[t]he Commission ... has an institutional motivation to protect its 'much-valued discretion' by engaging in the type of vindication that might discourage challenges to its authority, particularly those made by resort to the courts." *Id.*

In contrast to *Bono*, the facts of this case provide no basis for a presumption of vindictiveness. Fenner's original petition could not be construed as a challenge to the Commission's authority. Fenner would have us presume vindictiveness because his petition challenged the Commission's jurisdiction over him. However, "[p]resuming vindictiveness on this basis alone would be tantamount to presuming that a judge will be vindictive towards a defendant merely because he seeks an acquittal." *McCullough*, 475 U.S. at 139, 106 S.Ct. 976. Application of the presumption requires a more "salient triggering event," which was not present in this case. *Kindred*, 894 F.2d at 1480.

Further, the Commission provided "wholly logical," "nonvindictive" reasons for issuing the parole violation warrant. *Newman*, 6 F.3d at 630 (internal quotations omitted). Indeed, at his parole revocation hearing, Fenner was found guilty of five of the six violations charged in the Commission's warrant, indicating strongly that the Commission had legitimate, nonretaliatory reasons for arresting Fenner, which "affirmatively appear[ed]" in the warrant. *Bono*, 197 F.3d at 416 (internal quotation omitted).

### B.

In the absence of a reasonable likelihood that the Commission's action was the product of vindictiveness, Fenner must assume his burden to prove actual vindictiveness without the presumption assistance. *Id.* The district court held that Fenner failed to meet his burden. The only evidence Fenner produced in support of his vindictiveness claim was the declaration of Robin Packel, a research attorney in the Oakland, California Federal Public Defender's office. Packel declared that a conversation with Fenner's probation officer, James Lee, led her to believe that Lee was "aware that Mr. Fenner had filed or was planning to file a habeas petition challenging the special parole." Further, Packel stated that "it appears that the special parole revocation proceedings against Mr. Fenner were initiated by ... Lee." The obvious implication Fenner draws from this declaration is that Lee initiated Fenner's parole revocation proceedings in retaliation against Fenner for filing (or planning to file) a habeas petition challenging the special parole term. Beyond making this inferential leap, Fenner would also have us impute Lee's alleged motive to the Commission as an institution. We need not decide whether the Commission may ever be liable pursuant to imputed responsibility, because Fenner has failed to supply sufficient evidentiary proof of actual vindictiveness, either on the part of Probation Officer Lee or the Commission. Therefore, we hold that the district court did not err in finding that the Commission's decision to charge Fenner with parole violations was not proven to be based on a malevolent motive.

AFFIRMED.