George W. NULPH, Petitioner–
Appellant,

v.

**Dave COOK, Director of the Department of Corrections; Hardy Myers, Attorney General of the State of Oregon, Respondents–Appellees.**

No. 01–35556.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2002.

Filed June 26, 2003.

---

Wendy R. Willis, Assistant Federal Public Defender, Portland, OR, for the petitioner-appellant.

Timothy A. Sylwester, Assistant Attorney General, Salem, OR, for the respondents-appellees.

Before: FERGUSON, W. FLETCHER, Circuit Judges, and KING,* District Judge.

Opinion by Judge FERGUSON; Dissent by District Judge KING.

## OPINION

FERGUSON, Circuit Judge.

Petitioner/Appellant George William Nulph appeals the District Court's denial of his habeas petition, which alleged that the Oregon State Board of Parole

---

* The Honorable George H. King, United States District Judge for the Central District of California, sitting by designation.

("Board") vindictively increased his sentence from 30–years to 75–years imprisonment after he prevailed in this Court on a previous habeas action challenging the Board's retrospective application of two Oregon sentencing rules. The District Court denied the habeas petition, rejecting the Magistrate Judge's recommendation to grant relief. We reverse.

## I.

### A.  Original Sentence

In 1986, Nulph was convicted by a jury in Oregon state court of multiple offenses relating to a kidnapping and rape. The trial court found Nulph to be a dangerous offender pursuant to Oregon Revised Statute § 161.725 and sentenced him to seven 30–year indeterminate terms (with 15–year minimum terms) and one 5–year term. Five of the 30–year terms ran consecutively. The court imposed a maximum sentence of 155 years, with a minimum of 75 years.

In accordance with Oregon's two-step procedure for sentencing, the Board held a hearing in 1987 to set Nulph's release eligibility date.[1] *See Nulph v. Faatz,* 27 F.3d 451, 452–53 (9th Cir.1994) (describing state procedures whereby the trial court imposed an indeterminate sentence and the Board later set the actual sentence). Because the trial court had imposed a minimum term of imprisonment, the Board had the option either to uphold the judicially imposed minimum term or to override it

and calculate Nulph's release eligibility date based on a matrix range. *Id.* at 453.

Under the administrative rule in effect at the time of Nulph's offense, the Board was required to treat two or more consecutive judicially imposed minimum terms as a "single, unified term and either override them all or uphold them all." *Id.* (citing *Roof v. Bd. of Parole,* 85 Or.App. 188, 736 P.2d 193, 195 (1987), interpreting Or. Admin. R. § 255–35–023 (1986) (hereinafter "all-or-nothing rule")). In 1987, the administrative rule was amended to permit the Board to override " 'one or more of the judicially imposed minimums.' " *Id.* at 454, (quoting Or. Admin. R. § 255–35–023(3) (1987) (hereinafter "one-or-more rule")).

In Nulph's case, the Board applied the new one-or-more rule to override three of his 15–year minimum terms. It also applied a new matrix range method, enacted after the time of Nulph's offense, to set his matrix range at 310 to 414 months.[2] *Id.* at 454. The Board thus set Nulph's release eligibility date for the year 2017, following a term of 360–months imprisonment. *Id.* at 453–54.

In explaining why it did not uphold all the judicially imposed terms, the Board decision ("1987 Board decision") stated that "the minimum terms [are] not an appropriate penalty for the criminal offense and the minimum terms are not necessary to protect the public." The Board further explained: "We feel that the sentences or the minimums that were imposed by the courts is [*sic* ] excessive and that

---

**1.**  Because Nulph was found to be a "dangerous offender" under state law, the Board hearing was to set a date for parole consideration, rather than a date for actual release. *Nulph v. Faatz,* 27 F.3d 451, 453 & n. 1 (9th Cir.1994) (citing Or.Rev.Stat. § 144.228(1)).

**2.**  At the time of Nulph's offense, Oregon followed a "principle-and-base" method of determining a prisoner's matrix range by calcu-

lating the range for the principal conviction and adding it to the base ranges for each additional conviction. *Nulph,* 27 F.3d at 453(citing former Or. Admin. R. § 255–35–005(11)). In 1987, the state legislature revised the rules for calculating the matrix range so as to reflect the standard ranges for all the crimes. *Id.* at 454 (citing 1987 Or. Laws ch. 634, §§ 2, 42(2)).

setting you within your guideline range of 360 months, is an appropriate sanction at this point for your criminal conduct." *Id.* at 454 n. 5.

## B. Previous Petition for Habeas Relief

After exhausting his state remedies, Nulph filed a federal writ of habeas corpus, challenging the 1987 Board decision as violative of the Ex Post Facto and Due Process Clauses because it applied two administrative rules that were not in effect at the time of his offense. *Id.* at 454. The District Court denied the petition.

On appeal, we granted habeas relief, holding that the "retrospective application of the new method for calculating the matrix range violated the Ex Post Facto Clause." *Id.* However, we rejected Nulph's facial ex post facto challenge to the Board's use of the new one-or-more rule to override three of his minimums, as opposed to the all-or-nothing rule in effect at the time of Nulph's offense. *Id.* at 454, 457. Moreover, we explicitly declined to address whether the partial override violated ex post facto and due process principles as applied to Nulph. *Id.* at 457.

Based on the Board's retrospective application of the new method for calculating the matrix range, we vacated Nulph's parole eligibility date and remanded for resentencing. *Id.* The District Court remanded to the Board for reconsideration of Nulph's sentence under the old method for calculating the matrix range, explicitly noting that habeas relief had been denied in all other respects.

## C. Re–Sentencing on Remand

On remand, the Board held a hearing to recalculate Nulph's sentence. On February 22, 1995, Nulph appeared with an inmate legal assistant. At the opening of the hearing, a Board member stated: "My understanding from your appellate deci-

sion is that you would like us to consider what was considered the former rules. It's kind of an all or nothing deal in terms of your minimum sentences." In response, Nulph stated: "Yes." The Board member asked if that was his understanding, and Nulph responded affirmatively. Nulph deferred all further questions to the inmate legal assistant, who proceeded to identify several alternatives, including: overriding all the minimum terms, departing downwards for mitigating factors, and adjusting upwards for aggravating factors.

After deliberation, the Board unanimously voted to "sustain [all the] judicially imposed minimum[s]." Accordingly, the Board reset Nulph's term of imprisonment from 360–months to 900–months imprisonment. The Board decision ("1995 Board decision") reasoned: "The minimum term is an appropriate sanction for the criminal conduct and [is] necessary for the protection of the public." It noted that it had applied the all-or-nothing rule and used the old matrix-range method. Nulph's parole consideration date was moved from the year 2017 to the year 2062.

## D. Present Petition for Habeas Relief

On January 16, 1997, Nulph filed a petition for a writ of habeas corpus in the state court, alleging that the 1995 Board decision was unlawful and violated his due process rights under both the federal and state constitutions. Nulph alleged that the Board's action was "retribution because of the petitioner's success on appeal of the Board's earlier decision," and argued that its "apparent vindictiveness is aimed at chilling the appeal rights of petitioner and others." The petition was dismissed without prejudice. The Oregon Court of Appeals affirmed the dismissal without opinion, and the Oregon Supreme Court subsequently denied review. *Nulph v. Thompson,* 152 Or.App. 153, 951 P.2d

205 (1998), *rev. denied,* 326 Or. 507, 953 P.2d 395 (1998).

Nulph then filed the instant pro se habeas petition, alleging a federal due process deprivation effected by the Board's resentencing. He asserted that the Board had vindictively increased his sentence from 360 months to 900 months without articulating "how or why the Plaintiff's situation or behavior had deteriorated so dramatically since his previous parole board hearing in 1987 to justify extending his incarceration [by] 45 years."

Magistrate Judge Janice Stewart agreed with Nulph, recommending that the District Court grant habeas corpus relief. The Magistrate Judge found that a presumption of vindictiveness applied under *North Carolina v. Pearce,* 395 U.S. 711, 725–26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *limited by Alabama v. Smith,* 490 U.S. 794, 799, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). She also rejected the State's proffered explanation for the enhanced sentence—that Nulph had elected the all-or-nothing rule—as failing to rebut the *Pearce* presumption because she found insufficient evidence that he elected the rule. Further, she found that, even under the all-or-nothing rule, the Board could have avoided the drastic increase in the sentence. Thus, she recommended granting relief.

On May 8, 2001, the District Court denied habeas relief. Although the District Court agreed with the Magistrate Judge that the *Pearce* presumption of vindictiveness applied, it disagreed that the State failed to rebut that presumption. Rather, it concluded that the increase in the sentence was attributable to Nulph's election of the all-or-nothing rule. Finding no evidence of actual vindictiveness, the District Court denied habeas relief. Nulph filed this timely appeal.

## II.

■ We review de novo the District Court's denial of habeas corpus. *Baeta v. Sonchik,* 273 F.3d 1261, 1263(9th Cir.2001). We review the District Court's factual findings for clear error. *Lopez v. Thompson,* 202 F.3d 1110, 1116(9th Cir.), *cert. denied,* 531 U.S. 883, 121 S.Ct. 198, 148 L.Ed.2d 138 (2000).

■ Because Nulph filed his habeas petition after the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")'s effective date, AEDPA applies. *See Pirtle v. Morgan,* 313 F.3d 1160, 1166–67 (9th Cir.2002) (citing *Lindh v. Murphy,* 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). "Under AEDPA, federal courts may grant a writ of habeas corpus only if the state court ruling 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at 1167(quoting 28 U.S.C. § 2254(d)).

■ However, AEDPA's deferential standard noted above does not apply in this case because the state court did not reach the merits of Nulph's due process claim. Under Oregon law, habeas corpus is available

(1) [w]hen a petition makes allegations which, if true, show that the prisoner though validly in custody, is subjected to a further "imprisonment or restraint" of his person that would be unlawful if not justified to the court, and (2)[w]hen a petition alleges other deprivations of a prisoner's legal rights of a kind which, if true, would require immediate judicial scrutiny, if it also appears to the court

that no other timely remedy is available to the prisoner.

*Penrod v. Cupp,* 283 Or. 21, 581 P.2d 934, 937 (1978).

The state court in this case relied on the *Penrod* standard when it dismissed Nulph's petition in its entirety on its own motion, finding that the "Petition fail[ed] state [sic] a claim for habeas corpus relief and fail[ed] to allege fact [sic] with particularity which, if true, would entitle him to habeas corpus relief." The Oregon Court of Appeals affirmed the lower court's decision without opinion, and the Oregon Supreme Court subsequently denied review. *Nulph v. Thompson,* 152 Or.App. 153, 951 P.2d 205 (1998), *rev. denied,* 326 Or. 507, 953 P.2d 395 (1998).

In *Keenan v. Peterson,* 307 Or. 323, 767 P.2d 441 (1989), the Oregon Supreme Court held that when a petition fails to allege either type of harm described in *Penrod,* the trial court should "dismiss[ ] the writ ... without reaching the merits." *Id.* at 442; *see also McClaflin v. Wright,* 107 Or.App. 688, 813 P.2d 1098, 1102 n. 6 (1991) ("[T]he court should not issue a decision on the merits if the pleading fails to allege facts that raise a claim that is cognizable in *habeas corpus.*"). In accordance with *Penrod* and *Keenan,* we understand the state court's dismissal of Nulph's petition not to have been a decision on the merits.

We recently held in *Pirtle* that "when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo." 313 F.3d at 1167. Because the state court did not issue a decision on the merits of Nulph's petition, we review Nulph's claims de novo. *Id.*

On appeal, Nulph asks us to grant habeas relief on the basis that the Board vindictively increased his sentence following the reversal of its decision on appeal. Nulph contends that the Board's 45-year increase

in his sentence triggers a presumption of vindictiveness under *Pearce,* which the State has failed to rebut.

■ A defendant has a due process right under the Fourteenth Amendment not to be subjected to vindictive sentencing after successfully attacking a conviction or sentence. *Pearce,* 395 U.S. at 725, 89 S.Ct. 2072. As the Supreme Court has explained: "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort...." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1977). Due process also "requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Pearce,* 395 U.S. at 725, 89 S.Ct. 2072 (footnote omitted). Otherwise, the defendant will be chilled in the exercise of his right to challenge a conviction or sentence. *Id.*

Noting that the "existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case," the Supreme Court in *Pearce* crafted a prophylactic measure whereby vindictiveness is presumed "whenever a judge imposes a more severe sentence upon a defendant after a new trial," and the reasons for the enhancement do not "affirmatively appear." *Id.* at 725 n. 20, 726, 89 S.Ct. 2072.

■ The Supreme Court has since limited the applicability of the *Pearce* presumption to cases "in which there is a 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Smith,* 490 U.S. at 799, 109 S.Ct. 2201(quoting *United States v. Goodwin,* 457 U.S. 368, 373, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)) (citations omitted). We have held that no reasonable likelihood of vindictiveness exists unless there is some

"triggering event," such as a reversal and remand. *Bono v. Benov,* 197 F.3d 409, 417–18 (9th Cir.1999).

■■■ When the *Pearce* presumption applies, it is rebutted only by "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." 395 U.S. at 726, 89 S.Ct. 2072; *see also Wasman v. United States,* 468 U.S. 559, 565, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) (holding that the reasons must be based on "objective information in the record justifying the increased sentence"). The State bears the burden of rebutting the presumption. *Wasman,* 468 U.S. at 569, 104 S.Ct. 3217. If it fails to do so, we may vacate the sentence and grant habeas relief. *See Pearce,* 395 U.S. at 726, 89 S.Ct. 2072.

## A. *Pearce* Presumption of Vindictiveness

First, we must determine whether the *Pearce* presumption of vindictiveness applies to Nulph's new sentence. This presumption applies if there is a " 'reasonable likelihood' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Smith,* 490 U.S. at 799, 109 S.Ct. 2201 (citations omitted); *see also Bono,* 197 F.3d at 416–18 (requiring "triggering event").

■■■ We agree with the District Court that the *Pearce* presumption applies in this case. Because the Board imposed a harsher sentence (45 more years) on direct remand from Nulph's successful challenge to its retrospective application of the new matrix-range method, and because the Board's reasons for increasing Nulph's sentence do not "affirmatively appear," *Smith,* 490 U.S. at 798–99, 109 S.Ct. 2201("In order to assure the absence of [a

vindictive] motivation, . . . whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear.") (quoting *Pearce,* 395 U.S. at 726, 89 S.Ct. 2072), there is a reasonable likelihood of vindictiveness. *See Bono,* 197 F.3d at 417–18. Further, the presumption applies to the Board's decision even though different Board members may have presided over the case on remand. *See Fenner v. U.S. Parole Comm'n,* 251 F.3d 782, 788 (9th Cir.2001). Accordingly, we presume vindictiveness unless the State can meet its burden to rebut the *Pearce* presumption.

The dissent argues that the *Pearce* presumption does not apply in this case because "[t]he record of the Board hearing after remand shows that Nulph stated that he wanted the application of the pre–1987 'all or nothing' rule.' " Dissent at 8626–27. However, Nulph's election of the "all or nothing rule" does not "affirmatively appear." Moreover, as discussed below, there is insufficient evidence that Nulph elected the "all or nothing rule" and thus the Board's reasons for increasing Nulph's sentence are illegitimate. While Judge King is correct that the *Pearce* analysis is two-pronged, we cannot blindly accept the Board's proffered reasons.

## B. Rebuttal of the Pearce Presumption

■■■ Having found that the *Pearce* presumption applies, we must next determine whether the State has carried its burden to rebut the presumption of vindictiveness. *Wasman,* 468 U.S. at 569, 104 S.Ct. 3217. The presumption can be overcome only if the State proffers "objective information [from the record] concerning identifiable conduct on the part of the defendant occurring after the time of the original sen-

tencing proceeding." [3] *Pearce,* 395 U.S. at 726, 89 S.Ct. 2072; *accord Bono,* 197 F.3d at 420; *see also United States v. Rapal,* 146 F.3d 661, 664 (9th Cir.1998) ("The reason must have at least something to do with conduct or an event, other than the appeal, attributable in some way to the defendant.").

Here, the State argues that the Board's increase in Nulph's sentence is justified by Nulph's election of the all-or-nothing rule and the Board's resultant loss in flexibility when calculating his parole-eligibility date on remand. We reject that argument. First, Nulph did not freely elect the application of the all-or-nothing rule. Second, despite its arguments about the Board's loss of flexibility, the State has not presented any facts to show why, on remand, the Board found a 75–year term of imprisonment to be appropriate when it had previously found that term to be excessive and unnecessary to protect the public.

## 1. Insufficient Evidence that Nulph "Elected" the Rule

First, there is insufficient evidence that Nulph elected the application of the all-or-nothing rule to his case. At the re-sentencing hearing, Nulph responded affirmatively to a Board member's statements that it would apply the all-or-nothing rule. The Board member stated: "My understanding from your appellate decision is that you would like us to consider what was considered the former rules. It's kind of an all or nothing deal in terms of your minimum sentences." In response, Nulph stated: "Yes." When asked if that was his understanding, he responded affirmatively.

However, his affirmative response is not an answer to a question. Rather, it is a response to a compound, and somewhat ambiguous, statement. The Board member stated that he understood Nulph to want the Board to apply the former *"rules,"* including both the old matrix-method and the all-or-nothing rule, and then stated that "it's kind of an all or nothing deal." Nulph's one word response to this statement does not adequately demonstrate that he affirmatively elected the all-or-nothing rule.

In considering whether Nulph's actions are sufficient to show that he knowingly chose the all-or-nothing rule, the facts of *Palacios v. Board of Parole and Post–Prison Supervision,* 132 Or.App. 243, 888 P.2d 69 (1995), are instructive. In *Palacios,* the defendant affirmatively argued on the record that the Board should apply the all-or-nothing rule to his case. *Id.* at 70. In response, the Board members cautioned him repeatedly that he had the choice to proceed under either the all-or-nothing rule or the one-or-more rule, and that Board was unlikely to override the minimums if he chose the all-or-nothing rule. *Id.* at 70–71. In fact, the various Board members asked the defendant *eight* times if he understood the options before him and/or the implications of his choice. *Id.*

In contrast, Nulph merely agreed after the Board member made a somewhat ambiguous compound statement. The Board offered no other options and did not inform him of the consequences of his choice. The Board did not tell him that it could leave the minimum terms as they were set

---

**3.** Since the pronouncement of *Pearce,* the Supreme Court has clarified that events occurring *before* the original sentencing may also justify the harsher sentence, e.g., when additional evidence of guilt is later unearthed. *Tex. v. McCullough,* 475 U.S. 134, 141, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986); *see also*

*Rapal,* 146 F.3d at 663(explaining that relevant information may include "new evidence about [the defendant's] conduct or an event that somehow showed her to be more culpable than before") (citing *Wasman,* 468 U.S. at 569–70, 104 S.Ct. 3217).

by the 1987 Board decision, nor did it offer Nulph the option of re-applying the one-or-more rule.

The State points to statements by the inmate legal assistant who accompanied Nulph to the hearing. In arguing on behalf of Nulph, the assistant proffered a spectrum of alternatives to the Board, including: overriding all the minimums, departing downwards for mitigating factors, and adjusting upwards for aggravating factors. The State seizes on the assistant's argument for the override of all the minimum terms as evidence that Nulph requested the application of the all-or-nothing rule. However, as the Magistrate Judge pointed out, his argument for striking all the minimum sentences was consistent with both the all-or-nothing and the one-or-more rules. Under either rule, the Board had the authority to override all the judicially-imposed minimum terms.

Apparently recognizing the weakness of the record evidence that Nulph requested the application of the all-or-nothing rule, the State urges us to construe the Board's and the petitioner's actions "in context." The relevant context according to the State is Nulph's challenge to the Board's application of the new rules in *Nulph.* The State posits that, because Nulph raised an ex post facto objection to the application of the one-or-more rule on collateral appeal, he elected to have the all-or-nothing rule for purposes of re-sentencing. According to the State, because Nulph failed to withdraw his ex post facto objection on remand, the Board was compelled to apply the all-or-nothing rule in calculating his new sentence.

However, our mandate in *Nulph* manifestly did *not* require the Board to apply the all-or-nothing rule on remand. In *Nulph,* we rejected Nulph's ex post facto challenge to the retrospective application of the one-or-more rule, reasoning that it did not "on its face disadvantage defendants in general." 27 F.3d at 457. We agreed, however, that the Board violated the prohibition on ex post facto laws by calculating his matrix range in accordance with the new rule. Thus, we remanded to the Board only for a recalculation of Nulph's sentence pursuant to the old matrix-range method. *Id.* In issuing the writ of habeas corpus, the District Court's mandate also required the Board to recompute the matrix range, and it explicitly noted that habeas relief was denied in every other respect.

Accordingly, the Board was not required to revisit the issue of whether to override the minimum terms on remand. Rather, it could have simply left that aspect of Nulph's sentence undisturbed. Alternatively, it could have again applied the one-or-more rule after recalculating the matrix range. Yet, the Board overlooked these options. More importantly, it failed to explain this to Nulph.

Considering how little is on the record as to Nulph's actual understanding of the options available to him, it cannot be held that he voluntarily elected the application of the all-or-nothing rule on remand. This is heightened by the fact that Nulph was not represented by counsel at the hearing.

In summary, there is insufficient evidence in the record to support the State's argument that the 45–year increase in Nulph's sentence is attributable to his election of the all-or-nothing rule. The District Court clearly erred in finding that Nulph's acquiescence in the Board's statements, along with the Board's interpretation of his position, justified a contrary conclusion.[4] There is no record evidence

---

4. The District Court cited the Board's pre-

hearing notice, which stated that Nulph asked

of Nulph's election sufficient to sanction the 45–year increase in his sentence. The Magistrate Judge was correct when she found that the State has not presented sufficient evidence to counter the presumption of vindictiveness.

### 2. The All–or–Nothing Rule Does Not Explain the Harsher Sentence

Assuming we had found that Nulph freely elected the application of the all-or-nothing rule, we still could not conclude that the State rebutted the presumption of vindictiveness. That is, Nulph's election of the rule standing alone does not explain why the Board imposed such a drastic increase to his sentence.

The Board had previously refused to uphold all the minimum terms. In explaining its decision, the 1995 Board stated that minimum term was "an appropriate sanction for the criminal conduct and necessary for the protection of the public." However, the 1987 Board had concluded the opposite—that the terms were excessive and not necessary to protect the public. Yet, the 1995 Board failed to cite any new evidence whatsoever of Nulph's culpability or give any indication of why its estimates of the appropriate sentence had changed so drastically.

Furthermore, as the Magistrate Judge pointed out, it appears that Nulph was eligible for the override of the minimum term under the all-or-nothing rule. Indeed, he satisfies three of the four factors under former administrative rule section 255–35–022(b).[5] Thus, the Board should have overridden the minimum term and proceeded under the matrix range.

The State contends that the Board declined to proceed under the matrix range because Nulph's sentence would have been between 186 to 246 months (15–20 years), far below the 30 years that the Board found appropriate in 1987. That does not explain why the Board decided instead to increase the sentence by 45 years, far *above* the sentence that it found appropriate in 1987. Further, the release eligibility date is not the actual date of release but the date for considering whether a prisoner still poses a danger to society. Thus, the Board could have continued Nulph's incarceration past that date if warranted by his subsequent conduct. Finally, the Board also had the option to increase the matrix range by applying aggravating factors if it found the sentence to be inappropriately low.

In sum, we are left without an explanation to resolve any doubt as to whether Nulph's harsher sentence was the result of

---

"to reconsider the sentencing structure of his … offenses with regard to minimums—whether they should all be overridden or all upheld." However, this notice was the Board's interpretation, and it bears neither Nulph's signature nor other indicia of approval. Moreover, our review of the record has uncovered no written request by Nulph precipitating the Board's notice. *Cf. Addicks v. State Bd. of Parole,* 63 Or.App. 409, 663 P.2d 1310, 1311 (1983) (noting that the petitioner had "elected in writing to have his parole considered" under a former sentencing rule). We also reject the District Court's reliance on the 1995 Board decision's notation that it applied the all-or-nothing rule. That the Board *applied* the rule is uncontested and has

nothing to do with whether Nulph elected that rule.

**5.** The Board had discretion to consider the following factors: (1) a history/risk score of three or more; (2) the crimes were "part of the same criminal episode"; (3) the minimum term exceeds the matrix range; and (4) existence of mitigation. Or. Admin. R. § 255–35–022 (1985). Nulph met three of the factors because his history/risk score was a five, his crimes were all a part of one criminal episode, i.e., a kidnapping and rape, and his minimum term of 900 months exceeded his matrix range as determined by the 1995 Board, i.e., 186 to 246 months.

vindictiveness. From the review of the record, the reason for the increased sentence is Nulph's successful appeal, which resulted in a lower matrix range on remand. Consequently, the Board used the all-or-nothing rule as the means for achieving a higher sentence than was unattainable under the old matrix-range approach. However, this time the Board imposed a *drastically* longer sentence, one that was at odds with its prior determination that a 75–year sentence would be excessive and unnecessary to protect the public. The Board cannot now justify such a departure based on Nulph's purported election of the all-or-nothing rule, particularly where the direct evidence of his choice is limited to a pro se answer in response to a question, which was at best unclear.

We hold that the State has failed to carry its burden to rebut the presumption that Nulph's harsher sentence on remand was in retaliation for his successful challenge to his original sentence. Thus, it is evident that Nulph has been deprived of due process under *Pearce* and its progeny. Accordingly, we reverse the District Court's denial of habeas relief and remand to the District Court for issuance of the writ of habeas corpus and proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

KING, District Judge, dissenting:

I respectfully dissent. In my view, the presumption of vindictiveness did not arise in this case, and petitioner has made no showing of actual vindictiveness so as to be entitled to habeas relief.

It is, of course, well-settled that due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Alabama v. Smith,* 490 U.S. 794, 798, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 725, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). In order to ensure the efficacious use of the prophylactic rule announced in *Pearce,* the Court clarified that "[w]hile the *Pearce* opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness does not apply in every case where a convicted defendant receives a higher sentence on retrial." *Id.* at 799, 109 S.Ct. 2201(quoting *Texas v. McCullough,* 475 U.S. 134, 138, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986)) (internal quotations omitted). Instead, the *Pearce* presumption only applies to situations "in which there is a reasonable likelihood that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness[.]" *Smith,* 490 U.S. at 799–800, 109 S.Ct. 2201.

In *Smith,* the judge sentenced the defendant to 30 years imprisonment after entry of a guilty plea. Defendant then moved to withdraw his guilty plea, which the trial court denied. The appellate court reversed and remanded for trial. The jury convicted defendant, and the same judge sentenced him to life imprisonment plus a consecutive prison term of 150 years.

At sentencing, the judge explained that he imposed the harsher sentence because when he accepted the defendant's guilty plea, he had knowledge of only the defendant's version of the events. But after a full jury trial, the judge had heard all of the evidence, including the nature of the crimes and the impact on the victims. *Smith,* 490 U.S. at 795–97, 109 S.Ct. 2201.

The Court concluded that the harsher sentence on remand was insufficient to raise the presumption of vindictiveness because a judge sentencing a defendant on a fuller record provided "enough justifications for a heavier second sentence that it cannot be said to be more likely than not that a judge who imposes one is motivated by vindictiveness." *Id.* at 802, 109 S.Ct. 2201.

After *Smith,* we know the fact that a harsher sentence was imposed after reversal and remand from a higher tribunal does not necessarily demonstrate a reasonable likelihood of vindictiveness where the record reveals other justifications for the disparity. Thus, any contemporaneous explanations by the sentencing authority must be considered in determining whether the presumption applies in the first place, and not merely as potential bases for rebutting the presumption.

Here, the majority concludes that "[b]ecause the Board imposed a harsher sentence (45 more years) on direct remand from Nulph's successful challenge to its retrospective application of the new matrix-range method, and because the Board's reasons for increasing Nulph's sentence do not 'affirmatively appear,' (citation omitted), there is a reasonable likelihood of vindictiveness."

I disagree. The record of the Board hearing after remand shows that Nulph stated that he wanted the application of the pre–1987 "all or nothing" rule. The following discussion took place at the outset of the hearing:

> Ms. Middle: (The Board Chair) Before we proceed, I want to make sure I understand what your position is today. You're very aware that there is (sic) two structures involved, two potential ways that the Board can consider setting your matrix term, okay. We'll (sic) be often referred to as the old set of rules which is prior to '87, and the newer rules. My understanding from your appellate decision is that you would like us to consider what was considered the former rules. It's kind of an all or nothing deal in terms of your minimum sentences.
>
> Mr. Nulph: Yes.
>
> Ms. Middle: Okay. And is that your understanding of how you want us to view this matter today?
>
> Mr. Nulph: Yes.

From the foregoing, it is abundantly clear that Nulph wanted the Board to apply the pre–1987 rules whereby the Board was constrained to either override all or none of the minimum sentences imposed by the judge. This position was fully consistent with that which Nulph had taken during the prior habeas proceedings.

The majority does not discuss Nulph's election of the "all or nothing" rule in its consideration of whether the presumption arises, but only in its review of whether the respondent rebutted the presumption. I disagree with this analytical framework. Nulph's election is relevant to whether the presumption arises at all. In any event, regardless of where in that framework we consider Nulph's election, I believe the majority errs when it states that there is insufficient evidence to show that Nulph elected the "all or nothing" rule. This assertion is based on the questionable premise that the Board's statements were somehow ambiguous, and that Nulph might have thought he was electing to have the old matrix-range method apply as opposed to his election of the "all or nothing" rule on overriding the minimum sentences. Viewed in context, the Board's questions were unambiguous. There is no basis for speculating that Nulph might have thought that the Board was referring to anything other than how to deal with the minimum sentences. This is made obvious by the fact that even Nulph has not

argued on this appeal that the statements were ambiguous, or that he had misunderstood the gist of the Board's initial inquiry. The District Judge found that Nulph had elected to have the Board apply the "all or nothing" rule. This finding of fact is not clearly erroneous and should not be disturbed on appeal.[1]

Because Nulph's election presented it with a choice of either upholding or overriding all of the minimum sentences, the Board reasonably concluded that overriding all was not a viable option in light of Nulph's previous and current criminal conduct.[2] As the Board explained,

> Mr. Nulph is a difficult case to handle. The choices are not particularly appealing to the Board....[T]he previous Board set you at 360 months and as I look at the record ... the finding was not so much that they were setting you at a mid range, but what their comments were is that they felt that was appropriate for the criminal conduct that was involved in your past history is what they were looking at. The present matrix system as we look at it under the current calculations does not even get it to that range and the Board is con-

cerned that your criminal conduct is aggravated and such a factor that being in that matrix range is just an inappropriate range without any form of the minimums.

> \* \* \*

> We have considered the mitigation and aggravating factors and have rejected all of those and find them moot since the decision of the Board is unanimous and that is that we are going to uphold all the minimums.

> \* \* \*

> [Y]our conduct is such that you are too dangerous to risk that chance that you will be getting out anytime soon and certainly within seven years or anything else is way too soon to be considering that.

The record shows affirmatively that the Board imposed the higher sentence in light of Nulph's election and the constraints imposed by the "all or nothing" rule.[3] As in *Smith*, these changed circumstances are sufficient justifications such that "it cannot be said to be more likely than not that [the Board was] motivated by vindictiveness." *See Smith*, 490 U.S. at 802, 109 S.Ct. 2201.[4]

---

1. The majority's suggestion that Nulph's election was not made knowingly or with full awareness of the consequences of his choice misses the mark. This case is not about whether sufficient inquiry was made of Nulph to ensure his knowing and intelligent election of the "all or nothing" rule. It is about whether there is a reasonable likelihood the Board increased Nulph's sentence as a product of actual vindictiveness. Regardless of whether Nulph acted knowingly, the record shows that the Board believed Nulph desired the application of the "all or nothing" rule. There is no evidence to suggest that the Board was aware of Nulph's alleged confusion and exploited it vindictively.

2. Prior to the current convictions for kidnapping, felon in possession of a firearm, multiple counts of rape, and multiple counts of sodomy, Nulph had been convicted of murder and kidnapping.

3. The majority states that we cannot blindly accept the Board's proffered reasons. I agree. However, we do not blindly accept the Board's proffered reasons simply because we decline to substitute our judgment for that of the Board. In deciding whether the presumption arises, our inquiry is not whether we agree with the reasons or like the result. It is simply whether, in light of the Board's proffered reasons, there is a reasonable likelihood that the increased sentence was the product of actual vindictiveness. There is no such showing on this record.

4. The majority finds much fault with the Board's decision, and claims that it could have exercised a range of other options that might not have resulted in the dramatic in-

Nor does our decision in *Bono v. Benov,* 197 F.3d 409(9th Cir.1999), support the majority's conclusion. *Bono* stands only for the proposition that in the absence of a triggering event, a court cannot presume vindictiveness. *Id.* at 417. *See Kindred v. Spears,* 894 F.2d 1477, 1480 (5th Cir.1990) (holding that "[a]s a matter of logic, vindictiveness becomes a danger only where an event prods the sentencing court into a posture of self-vindication."). This in no way implies that where there is a triggering event, a court *must* presume vindictiveness. If *Bono* were read in this manner, it could not be reconciled with the Supreme Court's decision in *Smith.*

Moreover, the facts of *Bono* distinguish it from this case. There, we upheld a presumption of vindictiveness because there was a triggering event *and* no evidence suggesting a motive other than vindictiveness. In fact, we specifically noted that the parole date extension "was made without a contemporaneous statement of reasons in support of the extension." *Bono,* 197 F.3d at 412. Contrary to the majority's statement, the record of the hearing amply reflects the Board's contemporaneous reasons for its decision.

For the foregoing reasons, I cannot join in the majority's conclusion that the presumption of vindictiveness arose in this case. The *Pearce* presumption "does not apply in situations where the possibility of vindictiveness is speculative." *Texas v. McCullough,* 475 U.S. 134, 139, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986). On this record, the possibility of vindictiveness is speculative, at best.

As I would decline to apply the presumption of vindictiveness, I do not reach the question of whether respondent has rebutted the presumption. In the absence of the presumption of vindictiveness, petitioner bears the burden of proving actual vindictiveness. *Smith,* 490 U.S. at 799–800, 109 S.Ct. 2201. In this case, there is no evidence in the record to support a finding of actual vindictiveness. Accordingly, petitioner is not entitled to habeas relief.[5] I would affirm the judgment of the District Court, albeit on different grounds.

---

crease in Nulph's sentence. Given the facts of this case, even if the Board were incorrect in its assumptions and erred in its judgment, the majority does not explain how these alleged shortcomings show a reasonable likelihood that the higher sentence was the product of actual vindictiveness. Moreover, because the majority made these assertions when considering whether the Board had overcome the presumption of vindictiveness, they need not be addressed further because, in my view, the burden never shifted to the respondent to rebut any presumption.

**5.** Because the majority granted habeas relief on the basis of the presumption of vindictiveness, it did not need to reach petitioner's argument that the Board's action violated the rule announced in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Because I would deny habeas relief on the claim of vindictive sentencing, I would reach, but reject, Petitioner's *Apprendi* claim because we have since concluded that *"Apprendi* does not apply retroactively to cases on initial collateral review." *United States v. Sanchez–Cervantes,* 282 F.3d 664, 671 (9th Cir.2002).